UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES PIERRE,

                                        Plaintiff,

-vs-

CITY OF ROCHESTER, ROCHESTER POLICE
DEPARTMENT, MICHAEL GREEN, SANDRA
DOORLEY, MONROE COUNTY DISTRICT
ATTORNEY, MONROE COUNTY DISTRICT
ATTORNEY'S OFFICE and MONROE COUNTY,

                                        Defendants.

---

DECISION and ORDER

16-CV-6428 CJS

## INTRODUCTION

Charles Pierre ("Plaintiff") filed this action under 42 U.S.C. § 1983 and New York

State Law, alleging that he was improperly convicted of murder and arson, and that

defendants subsequently delayed informing him --for more than eight years-- of evidence

obtained post-conviction that eventually contributed to his convictions being vacated.

The newly-discovered evidence was voluntarily disclosed to Plaintiff, and he

successfully utilized New York State law to collaterally attack his conviction, and upon re-

trial he was acquitted.  The focus of this lawsuit, however, is whether the Defendants

(municipalities and municipal employees) violated Plaintiff's federal constitutional rights

by hindering his ability to use state post-conviction procedures to challenge his conviction,

and, in particular, whether Defendants had a constitutional duty to turn over the potentially

exculpatory information to him in a more-timely fashion.

Now before the Court is a motion by the City of Rochester and Rochester Police

Department to dismiss the Complaint for failure to state an actionable claim, and a cross-

motion by Plaintiff to file an Amended Complaint, which movants oppose as futile.   The

motion to dismiss is granted, and the cross-motion to amend is denied as to the City of

Rochester, the Rochester Police Department and individual City Police Officers named in

the Proposed Amended Complaint.   The cross-motion to amend is granted as to the

claims against the County defendants, who have not opposed the application.

### FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and the

Proposed Amended Complaint, and are accepted as true for purposes of this Decision

and Order.[1]   On August 2, 2002, two individuals (Clara Sconiers and Thomas Reed)

were murdered in an apartment at 262 First Street in the City of Rochester, New York,

and the apartment was set ablaze by the perpetrator.   Members of the Rochester Police

Department ("RPD") conducted an investigation which found, among other things, that

Plaintiff, who had a criminal record and who had previously dated Ms. Sconiers, had been

present at 262 First Street on the day of the murders and had argued with Sconiers.[2]   On

August 24, 2002, RPD officers arrested Plaintiff and charged him with the aforementioned

murders and arson.   The Monroe County Grand Jury later indicted Plaintiff for the crimes,

---

[1]The Court "limit[s] itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," but does "not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *West v. Harkness*, Civ. No. 9:17-CV-621 (GTS/DJS), 2018 WL 3748344 at *2 (N.D.N.Y. May 29, 2018) (citations and internal quotation marks omitted).

[2]The Court notes with disapproval that Plaintiff's counsel omitted this fact from both versions of his Complaint, while simultaneously asserting that there was no probable cause for Plaintiff's arrest.   In any event, the Court considers the fact because Plaintiff admitted it in the appellate brief that he filed with the New York State Supreme Court, Appellate Division Fourth Department. *See, e.g.*, 2006 WL 4704803 (4th Dept. June, 2006) ("Mr. Pierre admitted to previously dating Ms. Sconiers and to being at 262 First Street on the day of the fire and arguing with her, but denied killing Ms. Sconiers and Mr. Reed."); *see also, Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.").

and on June 16, 2003, Plaintiff was convicted following a jury trial. "At trial, numerous witnesses from the First Street neighborhood testified to seeing Mr. Pierre at or near 262 First Street both before and after the fire started and to witnessing arguments between Mr. Pierre and Ms. Sconiers on the day of the fire."3   On July 28, 2003, the trial court sentenced Plaintiff to, *inter alia*, life in prison without parole.[4]   Plaintiff's conviction was affirmed on appeal. *See, People v. Pierre*, 37 A.D.3d 1172, 829 N.Y.S.2d 386 (4th Dept. 2007), *leave to appeal denied*, 8 N.Y.3d 989 (2007).   Plaintiff, though, always maintained his innocence.

On September 18, 2005, approximately two years after Plaintiff's sentencing, RPD Officer Paul Bushart ("Bushart") responded to a domestic violence complaint at the residence of Darrell Boyd and Kathleen Boyd on Merchants Road in the City of Rochester. Upon Officer Bushart's arrival at the Boyd residence, Mrs. Boyd told him that she wanted Mr. Boyd out of the apartment, because he had been beating her.   Mrs. Boyd further told Officer Bushart that her husband had actually committed the murders and arson at 262 First Street, and that an innocent man had been convicted of the crimes.   In Bushart's presence, Mrs. Boyd threatened her husband that she would say more to Bushart if he

---

3 Plaintiff also did not include this fact in either version of his Complaint, but the Court nevertheless considers it because Plaintiff admitted it in the appellate brief that he filed with the New York State Supreme Court, Appellate Division Fourth Department. *See, e.g.*, 2006 WL 4704803; *see also, Purgess v. Sharrock*, 33 F.3d at 144 ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.").

[4]Docket No. [#32], Exhibit C at p. 1 ("[D]efendant was . . . sentenced to serve life in prison without parole on the Murder in the First Degree charge, concurrent terms of twenty five years to life on the Murder in the Second Degree charges, and a concurrent sentence on the Arson in the Second Degree Conviction.").

did not leave the premises.   Mr. Boyd became visibly upset at his wife's statement, and left the apartment.   After Mr. Boyd's departure, Bushart attempted to talk further with Mrs. Boyd, but she refused to provide any additional information.

Officer Bushart recorded the incident, including Mrs. Boyd's statements about the murders, in a police report which stated:

> Police responded to 835-7 Merchants Rd. for a family trouble.   In anger, S-Kathleen Boyd stated that S- Darrell Boyd had committed arson & murder. S- Kathleen Body threatened to divulge the details unless he left.   S-Darrell Boyd appeared to become upset by this.   S- Kathleen Boyd stated that S- Darrell Boyd was responsible for the arson/homicide at 262 First St. and that an innocent person was in prison for the incident.   After S- Darrell Boyd left, S- Kathleen Boyd would not discuss the matter further.

(Docket No. [#32], Exhibit B).   Mrs. Boyd apparently never explained to Bushart the basis for her accusation against her husband.[5]   It would not be until 2012 that Mrs. Boyd would provide that information, or, indeed, any further information, to the police.[6]

In any event, Bushart provided the report to his supervisor, Sergeant Daniel Beradini ("Beradini"), who entered the information into the RPD's files.   It is unclear what,

---

[5]At the time of the murders and arson in 2002, Mr. & Mrs. Boyd resided in the same apartment building at 262 First Street as the victims, and Mr. Boyd confessed to Mrs. Boyd that he was guilty of the crimes.   However, there is no indication that Mrs. Boyd provided either of those bits of highly-relevant information to Bushart. *See*, Docket No. [#32], Exhibit B.   Consequently, it appears that Mrs. Boyd merely made the bald assertion that her husband was responsible for the murders, without indicating the basis for her statement.   Moreover, when Bushart asked her to explain the statement, she refused. Therefore, the statement in ¶ 31 of the Proposed Amended Complaint that Mrs. Boyd told Bushart that "her husband (Darrell Boyd) had *confessed* to a homicide on First Street" is actually incorrect, and is further refuted by the next paragraph of the pleading, ¶ 32, which admits that Bushart recorded what Mrs. Boyd had said in his report.   Therefore, the assertion in ¶ 31 of the pleading that Bushart knew Mr. Boyd had confessed to the crimes is a logical leap that is unsupported by, and indeed, is refuted by, Bushart's report.

[6]*See, e.g.*, Docket No. [#32], Exhibit C, at p. 5 (Portion of Judge Randall's Decision and Order discussing Mrs. Boyd's testimony at the hearing).

if anything, Beradini may have done further about the report.   For example, it is unclear whether Beradini notified the Monroe County District Attorney's Office ("DA's Office"). Plaintiff's original Complaint indicated that Beradini so notified the DA's Office, though Plaintiff deleted that assertion from the Proposed Amended Complaint after the City pointed out that such assertion was beneficial to the City.[7]   It is undisputed, though, that no one notified Plaintiff about Mrs. Boyd's statement in 2005.

Almost seven years later, on May 2, 2012, RPD Investigator Robert Brennan ("Brennan") was investigating Darrell Boyd's involvement in another crime, when he discovered the report written by Officer Bushart in 2005, in the RPD's files.   Brennan interviewed Mrs. Boyd, who admitted that her husband had confessed to her that he had committed the 2002 murders and arson.   A few days later, on May 7, 2012, Brennan and RPD Investigator Gary Galetta ("Galetta") re-interviewed Mrs. Boyd, who repeated what she had previously told Brennan.   At the completion of the interview, Brennan and Galetta instructed Mrs. Boyd not to discuss her information with anyone else, including Plaintiff.   Later that month, on May 29, 2012, Brennan shared the information obtained from Mrs. Boyd with members of the Monroe County DA's Office.

The RPD and DA's Office subsequently investigated the matter.   Such investigation involved interviewing Plaintiff in prison, and finding and interviewing persons with whom Mr. Boyd had come into contact while he was in jail on other charges.   Such

---

[7]Compare Complaint [#1] at ¶ 19 with Amended Complaint [#30-1] at ¶ 36.   For a general discussion of the legal effect of such a change between pleadings, see generally, *Vasquez v. Reilly,* No. 15-CV-9528 (KMK), 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017) (collecting cases).

investigation established that Mr. Boyd had told a fellow inmate, Dolph Sturgis ("Sturgis"),

that he had committed the First Street murders.[8]   Sturgis later testified on Plaintiff's

behalf concerning statements that Mr. Boyd had made to him about the murders. *See*,

Docket No. [#32], Exhibit B, pp. 2-3. The RPD's and DA's Office's success in obtaining

such additional corroborative evidence was evidently due to their own investigative

efforts, as opposed to being the result of information provided by Mrs. Boyd.   In other

words, Mrs. Boyd never indicated that Mr. Boyd had confessed to anyone else.

On November 25, 2013, the District Attorney's Office informed Plaintiff that "Darrell

Boyd had confessed to several individuals" that he had committed the murders.[9]   This

was the first time that Plaintiff was made aware of the exculpatory evidence.   Plaintiff

then used the information provided to him by the DA's Office to file a collateral attack on

his conviction pursuant to New York Criminal Procedure Law ("CPL) § 440.10(1)(g).   At

a hearing on the collateral attack, the court heard testimony from Investigator Brennan,

Mrs. Boyd and Sturgis.   On July 17, 2014, the Honorable Douglas Randall, Monroe

County Court Judge, granted Plaintiff's motion to vacate the judgment of conviction.[10]   In

that regard, Judge Randall observed that "the admissions to the crime [by] another

individual who was present in the building and considered an initial person of interest

---

[8]*See*, Amended Complaint [#30-1] at ¶ 47 (Asserting that on November 25, 2013, Defendants told Plaintiff "that Darrell Boyd had confessed to *several individuals* that he had murdered Ms. Sconiers and Mr. Reed.") (emphasis added).

[9]Amended Complaint [#30-1] at ¶ 47.

[10]Judge Randall wrote, in pertinent part, that, "it is quite clear to this Court that, no matter what evidence was produced at the defendant's trial, this new evidence is of such character as to create a probability that had such evidence been received at the trial, the verdict would have been more favorable to the defendant." Docket No. [#8-1] at pp. 8-9 (citation and internal quotation marks omitted).

would very probably change the jury's verdict."[11] Judge Randall did not dismiss the charges altogether, but instead, found that Plaintiff was entitled to a new trial, since the newly-discovered evidence "create[d] the probability that had such evidence been received at trial the verdict would have been more favorable to the defendant."[12]

The District Attorney's office appealed Judge Randall's ruling, but on June 12, 2015, the New York State Supreme Court, Appellate Division Fourth Department, affirmed the ruling. The Office of the Monroe County District Attorney elected to re-try Plaintiff for the murders and arson.[13]   However, on August 13, 2015, following a jury trial, Plaintiff was acquitted of the charges.

On June 7, 2016, Plaintiff commenced the subject action in New York State Supreme Court, Monroe County. The Complaint named as defendants the City of Rochester ("the City"), the RPD, Monroe County ("the County"), the DA's Office, former District Attorney Michael Green ("Green"), and current District Attorney Sandra Doorley ("Doorley"). The Complaint purported to state five causes of action: 1) "False Arrest and False Imprisonment"; 2) "Intentional and Negligent Infliction of Emotional Distress" ("IIED & "NIED"); 3) "Negligent Training, Supervision and Retention"; 4) "Malicious Prosecution"; and 5) "Civil Rights Violations" under 42 U.S.C. § 1983 ("Section 1983" or

---

[11]Docket No. [#8-1] at p. 7.

[12]Docket No. [#32], Exhibit C at p. 7.

[13]Plaintiff implies that it was improper for the DA's Office to re-try him in light of the newly-discovered evidence.   Plaintiff is entitled to his opinion, but Judge Randall's ruling did not establish his innocence.   Rather, it merely established his "entitlement to a new trial." Docket No. [#32], Exhibit C at p. 6.

"§ 1983").   Defendants removed the action to federal court.

On June 30, 2016, the City and RPD ("Movants") filed the subject motion (Docket No. [#3]) to dismiss the entire Complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).   Movants argued, for example, that the negligent supervision claim was not actionable, because New York does not recognize such a claim for torts committed by employees acting within the scope of their employment.   Additionally, Movants contended that the Complaint did not plead a plausible claim for malicious prosecution, because neither the City nor the RPD "initiated" the prosecution against Plaintiff or acted with "malice," and because there was probable cause for the prosecution in any event.   Further, Movants argued that the § 1983 claim was insufficiently pled, because it did not plausibly allege a municipal policy, custom or practice; did not identify what constitutional right(s) had been violated; and, insofar as it was attempting to assert a Fourteenth Amendment Due Process claim, did not plausibly allege that Plaintiff had a liberty interest in being provided with potentially-exculpatory information *post-conviction*. (Anticipating that Plaintiff might later attempt to add individual city employees as defendants, the City further indicated that because there was no such liberty interest, any individual city employees would be entitled to qualified immunity.)   Movants further asserted that the RPD is not an entity that can be sued apart from the City of Rochester, and that the claims against the RPD are therefore redundant of the claims against the City, and should be dismissed.

On August 19, 2016, Plaintiff responded to the motion, and assented to the dismissal of the claims for false arrest/false imprisonment, IIED and NIED.   Additionally,

Plaintiff did not challenge Movants' arguments concerning the insufficiency of the claim for negligent supervision, training and retention.   Nor did Plaintiff challenge Movants' assertions regarding the propriety of including both the City and RPD as defendants. Plaintiff maintained, however, that the pleading adequately stated claims for malicious prosecution.   As to that claim, Plaintiff contended that the City and RPD had "continued the prosecution against him," after he had been convicted, by failing to tell him about Mrs. Boyd's statement.   Plaintiff also maintained that there was no probable cause for his prosecution, even though he had been convicted at trial, and even though the convictions were upheld on appeal, since the convictions were ultimately vacated by collateral attack.

As for his § 1983 claim, Plaintiff asserted that "withholding exculpatory evidence (even when discovered post-conviction) is actionable under Section 1983."[14]   As support for this contention, Plaintiff relied primarily upon two district court decisions, *Houston v. Partee*, 758 F.Supp. 1228 (N.D.Ill. 1991) ("*Houston*") and *Warney v. City of Rochester*, 536 F.Supp.2d 285 (W.D.N.Y. 2008) (Larimer, J.) ("*Warney*"), *rev. in part,* 587 F.3d 113 (2d Cir. 2009).   Plaintiff further asserted that it would be premature to consider the question of qualified immunity on a 12(b)(6) motion, unless it was evident from the face of the Complaint that the defense applied.

On September 1, 2016, Movants filed a reply (Docket No. [#9]), which essentially reiterated the points contained in their opening brief.   In response to Plaintiff's reliance on *Houston* and *Warney*, Movants maintained that those decisions are factually

---

[14]Docket No. [#8-3] at p. 5.

inapposite, because they involved the duty of prosecutors, not police officers, to make post-conviction disclosure of exculpatory evidence. Movants contended, moreover, that subsequent binding case authority has established that there is no federal post-conviction *Brady*-like duty to disclose exculpatory evidence. Further, the reply argued that the portion of the motion seeking dismissal of the negligent supervision claim should be granted as unopposed.

While the Motion to Dismiss was awaiting oral argument, the parties engaged in pretrial discovery. On March 15, 2017, Plaintiff filed a motion [#30] to amend the Complaint, stating: "During discovery, the Plaintiff uncovered new evidence which supported the drafting of several new causes of action and required the addition of six new parties . . . to the Complaint." The Proposed Amended Complaint drops former DA Michael Green as a defendant, but retains current DA Doorley, the County, the District Attorney's Office, the City and RPD as defendants. Further, the proposed pleading adds RPD officers Bushart, Beradini, Brennan and Galetta as defendants, as well as Assistant District Attorneys Brian Green ("ADA Green") and Kelly Wolford ("ADA Wolford") whom, the Proposed Amended Complaint contends, were told, in May 2012, by Brennan and Galetta, about Mrs. Boyd's exculpatory statement.

The Proposed Amended Complaint purports to assert ten separate causes of action, which may be summarized as follows: 1) § 1983 claims against Bushart, Beradini, Brennan, Galetta, DA Doorley, ADA Green, ADA Wolford, the County, the District Attorney's Office, the City and RPD; 2) conspiracy claims under 42 U.S.C. § 1985 against Brennan, Galetta, DA Doorley, ADA Green and ADA Wolford; 3) a claim under 42 U.S.C.

§ 1986 against DA Doorley (for neglect in preventing a conspiracy under 42 U.S.C. § 1985); and 4) a claim for false arrest/false imprisonment against the City, RPD, Bushart, Beradini, Brennan and Galetta.

The proposed amended claims under § 1983/§ 1985 purport to allege violations of, and/or conspiracies to violate, Plaintiff's rights under the "Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." Amended Complaint [#30-1] at ¶ 60; *see also, id.* at ¶ ¶ 67, 76, 86, 105. Specifically with regard to proposed Fourteenth Amendment Due Process claims, the motion to amend maintains that New York's CPL § 440.10(1)(g) provides a liberty interest in challenging one's conviction based upon new evidence, and also creates a concomitant liberty interest in receiving timely disclosure from the police and/or prosecutors of exculpatory information obtained post-conviction. The Proposed Amended Complaint also purports to assert constitutional claims under Section 1985 based upon the Defendants alleged attempts to "defeat the course of justice." (Sixth & Seventh Causes of Action).

The County Defendants do not oppose the amendment. However, the City, RPD, Bushart, Beradini, Brennan and Galetta oppose the amendment on the ground that the amendment would be futile, since the Proposed Amended Complaint still fails to state actionable claims. *See*, Docket Nos. [#32]&[#33]. Movants reiterate that to the extent Plaintiff's claims are based upon a "*Brady*-like obligation to promptly disclose to him exculpatory evidence which police first encountered years after [his] conviction," such

claims fails because such an obligation does not exist.[15]   Movants agree that New York

CPL § 440.10(1)(g) provides Plaintiff with a liberty interest in proving his innocence with

newly-discovered evidence, but note that such statute

> does not by its terms require any police disclosure of exculpatory evidence
> encountered post-conviction to the convicted defendant, and it certainly
> does not prescribe a timeline for any such disclosure – it only creates a
> forum for a convicted defendant, armed with new evidence, to challenge his
> conviction.

Docket No. [#33] at p. 11.   Movants further argue that New York law is not "deficient" in

a constitutional sense merely because it fails to require such disclosure.   Alternatively,

Movants contend that all individual city defendants would be entitled to qualified immunity,

since there has never been a clearly-established post-conviction *Brady*-like duty to

disclose exculpatory evidence.

Additionally, Movants contend that the Proposed Amended Complaint fails to plead

a basis for *Monell* liability against the City.   On this point, with regard to the alleged due

process claim, Movants point out that the alleged municipal policy or practice upon which

Plaintiff is attempting to base *Monell* liability is the failure by the City to have a policy

requiring the police to turn over exculpatory information to convicted individuals.

However, Movants contend that such failure cannot support a *Monell* claim, since, again,

convicts have no such post-conviction *Brady*-like right to disclosure.   For this same

reason, Movants contend that there can be no § 1985 conspiracy to violate a non-existent

---

[15]Docket No. [#33] at p. 1.

constitutional right.   Movants further contend that no Sixth Amendment speedy-trial right was violated, since at all relevant times Plaintiff had already been tried and found guilty; that no Fourth Amendment right was violated since Plaintiff's arrest, prosecution and imprisonment were supported by probable cause, which was not dissipated by Mrs. Boyd's hearsay statements to police; and that any state or federal claim for false arrest is time-barred in any event.

Plaintiff subsequently filed a reply [#39], and Movant's filed a sur-reply [#39] with the Court's permission.

On April 6, 2017, counsel for all parties appeared before the undersigned for oral argument.   Plaintiff's counsel asserted, *inter alia*, that a constitutional right to timely disclosure of post-conviction exculpatory evidence exists, where such disclosure "would prevent extended prolonged incarceration."   Movants' counsel responded that pursuant to *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009) ("*Osborne*"), a protected liberty interest exists only if it is provided by state law, and that while New York State law provides a liberty interest in connection with Criminal Procedure Law § 440.10(1)(g), the process provided thereunder does not include a post-conviction *Brady*-like right to disclosure.   Movants' counsel asserted that to the extent such fact is unfair, it is up to the New York State legislature to remedy the problem.   Plaintiff's counsel agreed that New York State law does not require police or prosecutors to make post-conviction disclosure of exculpatory evidence, but argued that such fact makes New York law deficient.   In particular, Plaintiff's counsel argued that any state law that does not require police and prosecutors to immediately turn over (to the convict himself)

exculpatory or potentially-exculpatory information obtained post-conviction is constitutionally deficient, since under the Due Process Clause, all convicted persons retain a limited liberty interest to exculpatory information and a right to whatever process is necessary to vindicate that liberty interest.   Although, nowhere in the Complaint or the Proposed Amended Complaint does Plaintiff allege that New York State law is deficient; rather, that is an argument Plaintiff's counsel made for the first time in his reply[16] and during oral argument.   Plaintiff's counsel also asserted that regardless of state law, there is a freestanding Due Process right to be free from "prolonged excessive detention."[17]

The Court observed that since the exculpatory information had been voluntarily turned over to Plaintiff, his federal claims were seemingly based on an assumed right to *more timely* disclosure of the information.   The Court asked Plaintiff's counsel to identify the basis for such a right.   Plaintiff's counsel responded that *Betterman v. Montana*, 136 S.Ct. 1609, 1618 (2016) and *Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015) ("*Newton*") established the right upon which he was relying.   At the close of oral argument, the Court offered counsel the opportunity to submit additional briefing on the specific issue of whether there is a constitutional right to timely disclosure of post-conviction exculpatory evidence.

On April 20, 2017, Plaintiff and Movants both submitted supplemental letter-briefs. (Docket Nos. [#41] & [#42], respectively).   Movants maintained that the Second Circuit's

---

[16] *See*, Docket No. [#37] at pp. 7-8.

[17] Counsel stated that such a claim arises where a plaintiff has "the right to be free from continued detention," and defendants violate that right under circumstances that shock the conscience.

decision in *Newton* (which held both that New York law provides convicted prisoners with a liberty interest in demonstrating their innocence with DNA evidence, and that the 14th Amendment Due Process clause entitles such prisoners to reasonable procedures to permit them to vindicate that liberty interest) is not applicable to the instant case, since the New York CPL does not establish a *Brady*-like duty to make post-conviction disclosure of exculpatory evidence.   Movants reiterated that any such right to disclosure would have to be enacted by the State of New York.   Alternatively, Movants pointed out that *Newton* was not decided until 2015, which means that the individual defendants would be entitled to qualified immunity in any event.   Movants also asserted, with regard to the issue of qualified immunity, that in *Seri v. Bochicchio*, 374 F.App'x 114 (2d Cir. 2010) ("*Seri*") (which, in turn, cited to *McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010) ("*McKithen*")), the Second Circuit held "that there is no clearly established right to post-conviction *Brady*-like disclosure of exculpatory evidence by police."   Plaintiff, on the other hand, cited *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) ("*Russo*") and *Warney* as clearly establishing a right to avoid prolonged detention.   Plaintiff also asserted that the Movants' reliance on *Seri* and *McKithen* was misplaced, since those cases are inapposite.

## DISCUSSION

As discussed earlier, the procedural history of this action is that Plaintiff initially asserted various claims, then abandoned some of those claims, and then asserted new claims while the motion to dismiss was still pending.   Accordingly, before proceeding further, it will be helpful to clarify which claims are still in play.

In the original Complaint [#1], Plaintiff asserted five claims: 1) false Arrest/false Imprisonment; 2) IIED & NIED; 3) negligent training, supervision and retention; 4) malicious prosecution; and 5) civil rights violations. After the City defendants moved to dismiss all five claims, Plaintiff expressly abandoned the first two of those causes of action,[18] and failed to respond to the City Defendants' arguments concerning the third cause of action, thereby implicitly abandoning that claim.[19] As a result, Movants' motion to dismiss was really directed at just the fourth and fifth causes of action, for malicious prosecution and civil rights violations, respectively.

However, while that motion to dismiss was still pending, Plaintiff moved to amend, and, insofar as the Proposed Amended Complaint pertains to the City or Rochester, the RPD, or the employees of the RPD, the claims are as follows: 1) § 1983 claims against Bushart, Beradini, Brennan, Galetta, the City and RPD (First, Second and Fifth Causes of Action); 2) Conspiracy under 42 U.S.C. § 1985 against Brennan and Galetta (Sixth and Seventh Causes of Action); and 3) false arrest against the City, RPD, Bushart, Beradini, Brennan and Galetta (Ninth Cause of Action). The proposed § 1983 claims and proposed § 1985 conspiracy claims are all based upon the same underlying conduct, namely, the failure to turn over Mrs. Boyd's exculpatory statement to Plaintiff in a more-timely fashion.

---

[18]*See*, Docket No. [#8] at ¶ 3.

[19]*See, generally, Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. R & C Transit, Inc.*, No. 216CV02481ADSARL, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (Indicating that where a plaintiff fails to respond to a defendant's motion to dismiss a particular claim, the claim may be deemed abandoned) (collecting cases);

It is well-settled that an amended complaint is intended to completely replace a prior complaint, [20] and the Proposed Amended Complaint does *not* re-assert the malicious prosecution claim that was in the original Complaint. Consequently, the Court deems the malicious prosecution claim as now having been abandoned, along with the IIED, NIED and negligent supervision claims.[21] Those claims are dismissed. On the other hand, the Proposed Amended Complaint *re-asserts* the false arrest claim which was in the original Complaint, but which Plaintiff had previously abandoned.

Where, as in this case, a court has before it both a motion to dismiss and a cross-motion to amend, it "has a variety of ways in which it may deal with the pending motion [to dismiss,] from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 80 (D. Conn. 1994). Here, the only claim remaining from the original Complaint ("civil rights violations") is included in the Proposed Amended Complaint, and Movants oppose the cross-motion to amend on the grounds of futility. Accordingly, since the "futility" standard is the same as the Rule 12(b)(6) standard,[22] the Court will simply consider the motion to

---

[20]*See, e.g., Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017) (Discussing "the general rule recognizing that an amended pleading completely replaces the original pleading.") (citations omitted).

[21]The Proposed Amended Complaint also does not include the IIED, NIED or negligent supervision claims, and those claims would therefore be deemed abandoned even if Plaintiff had not already abandoned them in response to the motion to dismiss.

[22]Pursuant to Fed.R.Civ.P. 15, a court should "freely" give leave to amend, "when justice so requires." However, a court may deny leave to amend for any number of "good reason[s], including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished, citation omitted).

dismiss in light of the Proposed Amended Complaint, and disregard the original Complaint.

In that regard, the legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d

Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, [23] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading

---

[23]The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

### Whether RPD Can Be Sued

Before considering particular claims, Movants raise a general objection to the inclusion of the RPD as a defendant in this action, asserting that claims against the RPD are redundant of claims against the City.   On this point, another Judge of this District recently stated:

> Pursuant to Federal Rule of Civil Procedure 17(b)(3), the capacity of local law enforcement agencies to sue or be sued is determined by reference to New York law. "Under New York law, departments which are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot sue or be sued," *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 302 (S.D.N.Y. 2007), and "[a] police department is an administrative arm of the municipal corporation." *Nix v. City of Rochester*, No. 6:14-CV-06395(MAT), 2017 WL 3387103, at *8 (W.D.N.Y. Aug. 5, 2017). The City Defendants are correct that the RPD, which is an administrative arm of the City [of Rochester] and lacks the capacity to sue or be sued, is not a proper defendant in this matter. As such, the City Defendants' motion to dismiss is granted as to all claims against the RPD

*Casaccia v. City of Rochester*, No. 6:17-CV-06323-MAT, 2018 WL 324420, at *4 (W.D.N.Y. Jan. 8, 2018) (Telesca, J.).   The Court agrees with that assessment, and similarly dismisses RPD from the action.

### New York State False Arrest/False Imprisonment Claims

Plaintiff asserts a claim for false arrest/false imprisonment under New York law, against the City, Bushart, Beradini, Brennan and Galetta. (Ninth Cause of Action).   The elements of such are claim are as follows:

Under the common law, a plaintiff may bring suit for false arrest and imprisonment against one who has unlawfully robbed the plaintiff of his or her freedom from restraint of movement.   To prevail on such a cause of action, the plaintiff must demonstrate that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement, that the plaintiff did not consent to the confinement and that the confinement was not privileged.   For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause.   Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty.   Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances.

*Torres v. Jones*, 26 N.Y.3d 742, 759, 47 N.E.3d 747, 759–60 (2016) (citations and internal quotation marks omitted).   "Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir.2012) (internal citation and quotation marks omitted).

Under New York law, a claim for false arrest only pertains to the period between arrest and arraignment or indictment, whichever occurs first. *See, Dabbs v. State*, 59 N.Y.2d 213, 218, 451 N.E.2d 186, 188 (1983) ("As the State correctly points out, damages for false imprisonment are not recoverable after arraignment."); *see also, Nwora v. City of Buffalo*, 23 Misc. 3d 1135(A), 889 N.Y.S.2d 883 (Sup. Ct. Erie County 2008) ("[I]f false arrest is established, damages are measured only to the time of arraignment or indictment, whichever occurs first."), *aff'd*, 63 A.D.3d 1661, 879 N.Y.S.2d 744 (4th Dept. 2009).

Here, the Proposed Amended Complaint asserts two different theories concerning false arrest.   First, it contends that the City of Rochester falsely arrested Plaintiff in 2002 for murder and arson, by virtue of having performed a shoddy investigation.   For example, the pleading alleges that prior to arresting Plaintiff, RPD officers failed to secure the crime scene, failed to interview witnesses and failed to investigate other potential suspects.[24]   Second, the Amended Complaint maintains that the City, Bushart, Beradini, Brennan and Galetta falsely" arrested/falsely imprisoned" Plaintiff *post-conviction*, by allowing him to remain imprisoned after they learned of Mrs. Boyd's assertion that her husband actually committed the murders and arson.   In particular, the pleading contends that these Defendants failed to disclose exculpatory evidence, which "caused the Plaintiff to be restrained in his liberty from September 18, 2005 through August 14, 2015."[25]   With regard to this claim, the Court understands Plaintiff to be asserting that the Movants' receipt of Mrs. Boyd's exculpatory statement negated or dissipated any probable cause that may have existed previously, since her statement indicated that Plaintiff was innocent.

Insofar as the Proposed Amended Complaint alleges that the City of Rochester and RPD defendants falsely arrested Plaintiff in 2002, it fails to state an actionable claim. Preliminarily, although this claim is purportedly asserted against the City, Bushart, Beradini, Brennan and Galetta, there is no plausible connection between the 2002 arrest

---

[24]Amended Complaint [#30-1] at ¶ 126.

[25]Amended Complaint [#30-1] at ¶ 127.

and either Bushart, Beradini, Brennan or Galetta. These individual defendants did not become involved with Plaintiff's case until years after his arrest and conviction.

Insofar at the false arrest/false imprisonment claim involving the 2002 arrest is being asserted against the City, the allegations that the RPD performed an inadequate investigation into the murders and arson are entirely conclusory and devoid of any factual support.[26] The pleading therefore does not plausibly plead that the RPD investigation was actually deficient. Moreover, the claim does not expressly allege that there was a lack of probable cause, but, instead, asserts that the arrest "was without justification," because of the investigating officers' "negligence."[27] However, such negligence would only be relevant if it resulted in a lack of probable cause,[28] and the pleading establishes that there was probable cause for the arrest, since it indicates that Plaintiff was indicted for, and convicted of, the same crimes for which he was arrested, and that his convictions were affirmed on appeal. *See, Swinton v. City of New York*, 61 A.D.3d 557, 558, 877 N.Y.S.2d 68, 69–70 (1st Dept. 2009) ("To the extent the subject notice of claim alleged false arrest and imprisonment and malicious prosecution, these claims are not viable in

---

[26]Proposed Amended Complaint [#30-1] at ¶ 126.

[27]Proposed Amended Complaint [#30-1] at ¶ 126.

[28]It is well-settled that New York does not recognize a claim for negligent investigation. *See, Coyne v. State*, 120 A.D.2d 769, 770, 501 N.Y.S.2d 505, 506 (1986) ("The case law is well settled that, on public policy grounds, no legally cognizable cause of action exists for negligent investigation of a crime and claimant's only avenue of relief is by way of the traditional remedies of false arrest and malicious prosecution suits."); *cf. Drake v. State*, 126 Misc. 2d 309, 310, 482 N.Y.S.2d 208, 209–10 (Ct. Cl. 1984) ("[T]he courts of this State do not recognize a cause of action for negligent prosecution or investigation. An individual who alleges that he has been wrongfully prosecuted must find recourse in an action for malicious prosecution, and is required to establish more than mere negligence; his burden is to prove want of probable cause and malice.") (citations omitted), *aff'd*, 115 A.D.2d 834, 496 N.Y.S.2d 382 (3d Dept. 1985).

light of petitioners' conviction of assault in the third degree, which was upheld by the Court of Appeals.   A conviction which survives appeal is conclusive evidence of probable cause, and thus, the finding of probable cause is fatal to each of the aforesaid causes of action.") (citations and internal quotation marks omitted); *see also, Phin v. City of New York*, 157 A.D.3d 553, 554, 70 N.Y.S.3d 1, 2 (1st Dept. 2018) ("The existence of probable cause constitutes a complete defense to plaintiff's state claims and federal claims for false arrest, false imprisonment, and malicious prosecution.   The existence of probable cause likewise defeats any claim for the same acts based on a lesser showing of negligence.") (citations omitted); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("In an action for false imprisonment, the plaintiff need not show that the prior proceedings against him terminated in his favor, but the defendant is entitled to prevail if he can establish that there was probable cause for the arrest, and a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause.") (citation omitted), *cert. den.*, 481 U.S. 1016 (1987).

Of course, Plaintiff later had his conviction set aside, through a collateral attack based upon new evidence.   However, such fact is irrelevant to the question of probable cause for the 2002 arrest, since the evidence upon which the collateral attack was granted did not exist at the time of Plaintiff's arrest, and no defendant in this action had access to information linking Mr. Boyd to the crimes for which Plaintiff was convicted, until years after Plaintiff's conviction was affirmed on appeal. *See, Adams v. City of New York*, 993 F. Supp. 2d 306, 328 (E.D.N.Y. 2014) ("The Second Circuit has stated that, a court must consider only those facts available to the officer at the time of the arrest and immediately

before it," when considering whether an officer has probable cause to arrest.   Thus, in the context of false arrest and malicious prosecution, courts have rejected evidence that arose subsequent to an arrest or the initiation of a prosecution as probative of probable cause.") (collecting cases; citations and internal quotation marks omitted); *see also, United States v. Pabon*, 871 F.3d 164, 175-178 (2d Cir. 2017) (Discussing issue of "dissipation in the context of new information emerging after a warrantless arrest based on probable cause," and concluding that in all but "extreme" cases, following an arrest based upon probable cause police officers are not required to continually "reevaluate whether the available evidence still definitively supports the initial probable cause determination.").   Moreover, Judge Randall's decision granting the collateral attack did not result in the dismissal of the indictment, but in a re-trial.   Accordingly, probable cause remained even after Plaintiff was granted a new trial.   In sum, the Amended Complaint fails to state an actionable claim for false arrest against the City, Bushart, Beradini, Brennan or Galetta with respect to the 2002 arrest.

The Amended Complaint also fails to state an actionable claim insofar as it alleges that these same defendants "falsely arrested/falsely imprisoned" Plaintiff by causing him to "be restrained in his liberty" between 2005 and 2015, after they learned of Mrs. Boyd's exculpatory statement but failed to disclose the statement to Plaintiff.   This theory fails to state an actionable claim for false arrest/false imprisonment under New York law, because, as already discussed, it is clear from the pleading that there was probable cause for the arrest.   In that regard, Mrs. Boyd's hearsay statement that her husband was guilty of the crimes and that Plaintiff was innocent, while certainly important, is not the type of

objective, clearly-exonerating evidence that could overcome the probable cause underlying Plaintiff's arrest. *See, e.g., Brown v. City of New York*, 92 A.D.2d 15, 20, 459 N.Y.S.2d 589 (1st Dept. 1983) ("At best for plaintiff, the alibi testimony that he was elsewhere at the time of the offense would have provided a jury issue on the trial of the criminal charges against him. It cannot be said that such evidence would dissipate probable cause for the arraignment. Like all such alibi testimony, the question would be one of credibility. In the absence of proof by plaintiff upon this trial that he had an alibi which would have exonerated him, there was no proof tending to dissipate the probable cause for the arrest found by the jury."), *aff'd*, 60 N.Y.2d 893, 458 N.E.2d 1248 (1983).

Further, an element of such claims under New York law is that the defendant must have confined or restrained the plaintiff, and the pleading indicates that Movants were not the ones restraining Plaintiff between 2005 and 2015.   Rather, Plaintiff was being confined by the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to the judgment of the trial court.

Nevertheless, Plaintiff contends that Movants *effectively* restrained him, or effectively prolonged his incarceration, by failing to disclose exculpatory information to him.  However, Plaintiff's attempt to fit this claim under the rubric of a New York false arrest/false imprisonment claim fails, because New York does not recognize such a claim. To begin with, the Court finds no New York case recognizing a false arrest/false imprisonment claim involving conduct that occurred either post-arraignment, post-indictment or post-conviction.   Rather, New York caselaw indicates that claims involving post-arraignment incarceration are attributable only to the tort of malicious prosecution.

*See, Landow v. Town of Amherst*, 28 A.D.3d 1223, 1224, 814 N.Y.S.2d 473, 474 (4th Dept. 2006) ("Damages resulting from postarraignment incarceration are attributable only to the tort of malicious prosecution[.]").   Similarly, the Court's research has turned up no New York case recognizing a cause of action for false arrest or false imprisonment based upon a theory of "unreasonably prolonged detention" after conviction.

In particular, the Court finds no case involving a false arrest/false imprisonment claim under New York law, involving someone who had been wrongly convicted of crime and who remained in jail because a police officer or other person failed to disclose exculpatory information obtained post-conviction.   Rather, the New York state courts and federal courts in this Circuit routinely entertain such claims solely as federal claims under the 4th Amendment and § 1983, arising pursuant to *Russo v. City of Bridgeport*, that are distinct from false arrest claims. *See, e.g., Jackson v. City of New York*, 29 F.Supp.3d 161, 178-179 (E.D.N.Y. 2014) (Discussing difference between a false arrest claim and "the separate claim for unreasonably prolonged detention" that arises under *Russo*); *see also, Sanders v. City of New York*, No. 12 CV 113 (PKC)(LB), 2015 WL 1469514 at *7-14, 19 (E.D.N.Y. Jan. 7, 2015) (Analyzing a claim for false arrest under New York law and a "prolonged detention" claim under § 1983 as distinct, non-overlapping claims with different elements); *Savane v. District Atty. of New York County*, 148 A.D.3d 591, 591 (1st Dept. 2017) (Listing the various claims being asserted, and referencing a claim for "unreasonably prolonged detention" as being separate from, and not as a sub-category of, a claim for false arrest); *Harewood v. Braithwaite*, 2013 WL 6162820 at *3 (E.D.N.Y. Nov. 25, 2013) ("As Defendant himself notes, "[a] false arrest claim is premised on the

plaintiff showing, among other things, that the arresting officer lacked probable cause for the arrest. A *Russo* claim rises after a lawful arrest based on probable cause.").

In sum, although the Second Circuit, in *Russo*, recognized a federal cause of action for unreasonably prolonged detention involving a failure to disclose exculpatory evidence, there is no analogous false arrest/false imprisonment claim under New York law. Accordingly, insofar as Plaintiff's New York false arrest/false imprisonment claim is based upon the Movants' failure to turn over exculpatory evidence obtained post-conviction, or to further investigate such evidence, it must be dismissed as against Movants for failure to state an actionable claim.

For all of the foregoing reasons, the Amended Complaint's Ninth Cause of Action for "false arrest and false imprisonment" under New York law, is dismissed as against the City, Bushart, Beradini, Brennan and Galetta, with prejudice.

Section 1983

The Proposed Amended Complaint's First, Second and Fifth Causes of Action purport to state claims against the Movants under 42 U.S.C. §1983. Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09–CV–00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

The First Cause of Action alleges that Bushart and Beradini violated Plaintiff's

"clearly established rights under the Fourth, Fifth, Sixth and Fourteenth Amendments,"
by "failing to share the exculpatory information [they] obtained on September 18, 2005,"
and that

> Bushart's and Beradini's conduct was so closely related to the deprivation
> of these clearly established constitutional rights as to be the moving force
> that caused the Plaintiff to be denied due process and to suffer a loss of
> liberty, prolonged detention, and a denial of his right to a speedy trial.

Amended Complaint at ¶ ¶ 56-61.   Similarly, the Amended Complaint's Second Cause
of Action alleges that Brennan and Galetta violated Plaintiff's "clearly established rights
under the Fourth, Fifth, Sixth and Fourteenth Amendments," by failing to disclose the
exculpatory information that they obtained in May 2012, and, further, by

> (i) withholding this exculpatory information for nineteen months; (ii)
> misleading the Plaintiff into believing that he (Defendant Brennan) was
> visiting Plaintiff in Attica to do a study on arson and murder[; and] (iii)
> specifically instructing Kathleen Boyd not to tell the Plaintiff that her
> husband confessed to the murders[.]

Amended Complaint [#30-1] at ¶ 67.   The Fifth Cause of Action, meanwhile, purports to
state a *Monell* claim against the City of Rochester.

Preliminarily, the claim that Brennan misled Plaintiff about the reason that he was
interviewing Plaintiff pertains only to Brennan.   Moreover, even assuming that Brennan
misled Plaintiff about the reason for the interview, such fact clearly fails to establish any
type of constitutional violation.   Brennan was clearly attempting to investigate the
veracity of Mrs. Boyd's claim, and Plaintiff had no constitutional right to know the true
reason for the interview.   Accordingly, the remaining issues are whether the Amended

Complaint plausibly pleads that Plaintiff's constitutional rights were violated, either when Bushart, Beradini, Brennan or Galetta failed to inform him of Mrs. Boyd's statement, or when Brennan and Galetta directed Mrs. Boyd not to speak to him, and if so, whether the pleading plausibly asserts that such violation occurred due to a City policy.   The Court will consider each of the alleged constitutional violations in turn.

Fourth Amendment

The Amended Complaint can be understood to assert two types of Fourth Amendment claim: A false arrest claim, and a *Russo* "prolonged detention" claim.[29]   A Fourth Amendment false arrest claim under Section 1983 has the same elements as a New York false arrest claim. *See, Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) ("A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.   Additionally, the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.") (citations and internal quotation marks omitted).   Accordingly, the Section 1983 false arrest claims fail for the same reasons that the state-law false arrest claim failed.

On the other hand, the elements of a Fourth Amendment *Russo* claim are (1) that Plaintiff had "a right to be free from continued detention stemming from law enforcement

---

29 *See, Russo v. City of Bridgeport*, 479 F.3d at 205 ("[T]his type of claim, which has in the past been treated as one based on substantive due process, should be examined under the Fourth Amendment instead.").

officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience." *Russo v. City of Bridgeport*, 479 F.3d at 205.   Here, there can be no question that the duration of Plaintiff's confinement is of constitutional magnitude, and is therefore sufficient to support a *Russo* prolonged detention claim.   However, the Proposed Amended Complaint does not plausibly allege that Movants violated Plaintiff's right to be free from such detention by failing to investigate or by suppressing evidence, or that the officers' conduct shocks the conscience.

To begin with, the exculpatory evidence in this case is not the type of "specific, readily-verifiable [evidence of] innocence" envisioned by the Second Circuit in *Russo*. The instant case does not involve DNA evidence, photographic evidence, fingerprint evidence, ironclad alibi evidence or other objective evidence that could conclusively exonerate Plaintiff. *See*, *Russo*, 479 F.3d at 209 ("An officer's duty to investigate *specific, readily-verifiable claims of innocence* in a reasonable time period clearly covers reviewing a surveillance camera video record of a crime, when, as here, it was an *easily available piece of physical evidence*.") (emphasis added); *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. Jun. 30, 2009) ("[T]he facts of *Russo* are dissimilar to the facts present here. In contrast with *Russo*, there was no *definitive evidence in the authorities' possession that could have proven that Forde was not the shooter*.") (emphasis added).   Rather, this action involved an unsubstantiated assertion, concerning a years-old crime, initially made in anger in the heat of a domestic dispute, the probable value of which rested entirely on Mrs. Boyd's credibility.   As already

discussed, such evidence by itself is not sufficient to overcome probable cause, let alone to conclusively establish Plaintiff's innocence. *See, e.g., Brown v. City of New York*, 92 A.D.2d 15, 20, 459 N.Y.S.2d 589.

Further, the Amended Complaint does not plausibly indicate that Movants "mishandled or suppressed" the evidence within the meaning of *Russo*. In *Russo*, the defendant police officers had a videotape which conclusively established the plaintiff's innocence, but they kept the videotape locked in a drawer and lied to the plaintiff about what the videotape actually showed. Here, by contrast, Bushart and Beradini had only Mrs. Boyd's unsupported assertion, made in anger during the heat of domestic dispute. Nevertheless, Bushart did not ignore the statement, but rather, he attempted to question Mrs. Boyd further about the matter, but she refused to cooperate. Bushart did not suppress the evidence, but, rather, he recorded it and reported it to his superior officer.

Similarly, Beradini did not suppress the information, but rather, he entered it into the RPD's records, which ultimately led to Plaintiff's conviction being set aside. Although Bushart and/or Beradini conceivably could have done more, such as by informing the DA's office or Plaintiff of the statement, their failure to do so does not amount to a violation of Plaintiff's right to be from continued detention under the circumstances presented in this action.

Neither did Brennan or Galetta "mishandle or suppress" evidence within the meaning of *Russo*. Rather, it was Brennan's investigation that led him to Mrs. Boyd's statement, which Beradini had entered into the RPD's records. Further, upon discovering Bushart's report, Brennan interviewed Mrs. Boyd, who, after a decade of

silence, decided to cooperate.   After Brennan's initial interview, he enlisted Galetta, and the two investigators re-interviewed Mrs. Boyd, after which Brennan notified the DA's Office and investigated the claim further.   Although Brennan and Galetta may have told Mrs. Boyd not to talk to anyone about the matter while they investigated it, such fact does not amount to suppression of evidence, particularly since there is no indication that Mrs. Boyd had any intention to talk to Plaintiff, or anyone else, about the matter.   In any event, the pleading does not suggest that the investigators' intent in that regard was malicious or wrongful.   Rather, it seems obvious that Brennan wanted to interview Plaintiff without him knowing the true reason therefor, which is a legitimate investigative tactic.

Furthermore, even assuming *arguendo* that the Proposed Amended Complaint plausibly pleaded that Bushart, Beradini, Brennan or Galetta "mishandled or suppressed" Mrs. Boyd's statement, it does not plausibly plead that the officers' conduct shocks the conscience or was unreasonable in a constitutional sense.   Again, the facts alleged here bear no resemblance whatsoever to those in *Russo*, which the Second Circuit described as involving "affirmative wrongdoing" that included lying and hiding evidence.30

Certainly, the conduct of Bushart and Beradini was not shocking or suggestive of deliberate indifference, given the circumstances under which Mrs. Boyd made her initial statement, her unwillingness to cooperate, and the fact that Plaintiff had been convicted by a jury and his conviction had been upheld on appeal.

Even more so, the conduct of Brennan and Galetta was not shocking or suggestive

---

30 *Russo*, 479 F.3d at 210.

of deliberate indifference, given the circumstances, which include the fact that once Brennan and Galetta became aware of Mrs. Boyd's statement, they commenced an investigation that ultimately led to Plaintiff being freed.   Indeed, Brennan testified favorably to Plaintiff at the 440 hearing before Judge Randall.   Plaintiff's real dispute with Brennan and Galetta is that they did not notify him about Mrs. Boyd's statement until *after* they completed their investigation, but as discussed later in this Decision and Order, they had no duty to do so. *See, Sanders v. City of New York*, No. 12 CV 113 PKC LB, 2015 WL 1469514, at *19 (E.D.N.Y. Jan. 7, 2015) ("Without some evidence beyond the fact that Israel may have failed to produce the exculpatory security video of the Neptune Avenue parking lot until months after plaintiffs' arrests, plaintiffs have not established conduct which 'shocks' the conscience."), report and recommendation adopted, No. 12 CV 113 PKC LB, 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015).

In sum, the Amended Complaint fails to state a plausible Fourth Amendment *Russo* claim. *See, e.g., Brightman v. NYC Police Officer Zuel Clement*, No. 16 CIV. 2507 (LGS), 2017 WL 1417301, at *3 (S.D.N.Y. Apr. 20, 2017) ("The Amended Complaint does not allege facts that, if true, would show that law enforcement officials mishandled or suppressed exculpatory evidence, or that they engaged in conduct that would shock the conscience. Plaintiff's prolonged detention claim is therefore dismissed."); *see also, Gonzalez v. United States*, No. 16-CV-1494(KAM), 2018 WL 1597384, at *16 (E.D.N.Y. Mar. 31, 2018) (Dismissing *Russo* claim pursuant to Rule 12(b)(6), noting that "Plaintiff has not alleged facts establishing the mishandling or suppression of exculpatory evidence, or any other conduct by SA Lee or the John Doe defendants that shocks the

conscience.")

Fifth and Fourteenth Amendments

Plaintiff also contends that Movants violated his procedural due process rights under the Fifth and Fourteenth Amendments, insofar as they failed to disclose Mrs. Boyd's statement to him while he remained incarcerated. *See, e.g.*, Pl. Memo of Law [#8-3] at p. 4 ("[H]is continued incarceration during that period (because he did not have access to that evidence to advocate for his release) would amount to a deprivation of a liberty [interest] for that period of time."); *see also*, Proposed Amended Complaint, First and Second Causes of Action, paragraphs 61, 68).

Movants contend that the Proposed Amended Complaint fails to state a Fifth Amendment claim, since that amendment does not apply to state actors.   Plaintiff has not addressed that argument, but nevertheless continues to baldly assert that Movants violated his Fifth Amendment rights.   However, Movants are correct. *See, Dusenbery v. United States*, 534 U.S. 161, 167, 122 S. Ct. 694, 699, 151 L. Ed. 2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits *the United States*, as the Due Process Clause of the Fourteenth Amendment prohibits *the States*, from depriving any person of [liberty or] property without "due process of law.") (emphasis added); *see also, Wolff v. State Univ. of New York Coll. at Cortland*, No. 113CV1397BKSCFH, 2016 WL 9022503, at *16 (N.D.N.Y. Feb. 5, 2016) ("Although Plaintiff alleges a violation of both his Fifth Amendment and Fourteenth Amendment rights, he cannot pursue a claim against state actors under the Fifth Amendment because the Fifth Amendment has not been applied to the states."), *aff'd sub nom. Wolff v. State Univ. of New York*, 678 F. App'x 4

(2d Cir. 2017).   Consequently, the Amended Complaint fails to state a Fifth Amendment claim.

As for the Fourteenth Amendment procedural due process claim, Movants asserted, in their motion to dismiss the Complaint, that such claim lacks merit since there is no freestanding *Brady*-like duty to disclose exculpatory information obtained post-conviction.   Rather, Movants contended that Plaintiff could have no right to such disclosure unless New York law provided him a liberty interest in that regard, which it did not.   In sum, Movants argued that the Complaint failed to state a Fourteenth Amendment procedural due process claim for deprivation of liberty, since it failed to identify an actual liberty interest.   Plaintiff responded to the motion to dismiss by cursorily asserting that his Fourteenth Amendment due process claim is supported by the *Houston* and *Warney* decisions, which, he maintained, hold that officials violate an inmate's federal constitutional rights when they withhold "exonerating evidence" obtained post-conviction. However, Movants' reply correctly pointed out that those decisions are factually inapposite.31

In the Proposed Amended Complaint, Plaintiff reiterates the Fourteenth Amendment due process claim, again based upon the alleged failure by Bushart, Beradini, Brennan and Galetta to "share the exculpatory information" with Plaintiff.32   In opposing the proposed amended pleading, Movants again assert that Plaintiff has failed to plausibly plead that he was deprived of a protected liberty interest without due process.

---

31 *See*, Movant's Reply [#9] at pp. 5-7.
32 *See, e.g.*, Proposed Amended Complaint at part 57.

Movants again point out that *Osborne* established that there is no freestanding *Brady*-like right to exculpatory evidence obtained post-conviction, and that New York law also does not provide such a liberty interest.    Plaintiff replies that *Osborne* is "inapposite to the facts of this case," and not "helpful to [Movants'] cause."33    Instead, Plaintiff contends that the *Osborne* decision is helpful to his case, since it implies that New York law should be deemed constitutionally inadequate insofar as it fails to provide him with a statutory right to exculpatory information obtained by police post-conviction.34    In other words, Plaintiff admits that New York law does not provide him with a liberty interest in obtaining exculpatory evidence post-conviction, but contends that such fact renders New York law constitutionally inadequate.

The Court agrees with Movants that Plaintiff has failed to state a plausible Fourteenth Amendment Procedural Due Process claim.    To begin with, *Osborne* established that there is no freestanding substantive due process right to *Brady*-like disclosure post-conviction. *See, e.g., Ermichine v. United States*, No. 06 CIV. 10208 LAP JL, 2011 WL 1842951, at *13 (S.D.N.Y. May 12, 2011) ("The Supreme Court has explained that the prosecutorial duty to disclose exculpatory evidence under *Brady* is a "preconviction trial right" that does not apply post-conviction or to post-conviction proceedings such as those Ermichine has initiated here.    Accordingly, even if Gozman's allocution and testimony did contain exculpatory information—which they do not—the Government had no *Brady* obligation to produce such information to Ermichine years after

---

33 See, Pl. Reply [#37] at un-numbered p. 2.
34 See, Pl. Reply [#37] at un-numbered p. 8 ("New York State's post-conviction discovery procedures are inadequate insofar as a convicted persons's ability to obtain discovery is quite limited.").

his conviction.") (citations omitted).

Such fact is significant because the two cases upon which Plaintiff primarily relies -- *Houston* and *Warney* – were decided prior to *Osborne.*   Further, the *Warney* decision found, contrary to *Osborne*, that *Brady* applies in the post-conviction context. Consequently, the portions of *Warney* and *Houston* on which Plaintiff relies are no longer good law.

On the other hand, *Osborne* indicated that state law may provide a plaintiff with a procedural-due-process liberty interest, and that such a "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Osborne*, 557 U.S. at 68, 129 S.Ct. at 2319. However, the *Osborne* decision cautioned federal courts about creating new rights in such circumstances, indicating that it was preferable to leave such matters to the state legislators, except where a state's law is "fundamentally inadequate:"

> Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.   The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. When a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume.   [A convict's] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework.   Instead, the question is whether consideration of [the convict's] claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation. Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.

*Osborne*, 557 U.S. at 69, 129 S. Ct. at 2320 (citations, footnotes and internal quotation marks omitted); *see also, McLean v. Brown*, No. 08-CV-5200 (JG), 2010 WL 2609341, at *7 (E.D.N.Y. June 25, 2010) ("A prisoner's post-conviction due process right to evidence is limited; it extends only to the proper application of a state-created right to such evidence.").

A plaintiff may also challenge "a municipal custom or practice that . . . undermines otherwise adequate State procedures." *Newton v. City of New York*, 779 F.3d 140, 150 (2d Cir. 2015) ("[A] failure of local government in carrying out its role [under CPL Section 440.30(1-a) to store evidence] can nullify the adequacy of State procedures and expose the municipality to constitutional liability."). In other words, a municipality can be sued for depriving a plaintiff of a state-created liberty interest. *Id.*

Here, there is no dispute that by enacting CPL section 440.10(1)(g), the State of New York has granted Plaintiff a liberty interest in pursuing post-conviction relief based upon newly discovered evidence generally. However, such a liberty interest by itself does not provide Plaintiff with a concomitant liberty interest in disclosure of exculpatory evidence obtained post-conviction. *See, McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010) (Observing that in *Osborne*, the Supreme Court "held that Osborne had a residual liberty interest, arising out of Alaska law, in proving his actual innocence before state courts that can provide post-conviction relief on the basis of that demonstration. *But the Court was clear that this residual liberty interest is limited. It does not entitle a prisoner to all exculpatory evidence, the kind of discovery that a defendant would be entitled to before trial.*") (emphasis added). Accordingly, it is clear that CPL sec 440.10(1)(g) does not

provide Plaintiff with the liberty interest that he claims in this action.   Neither does New York State law otherwise provide convicted persons with a liberty interest in having post-conviction potentially-exculpatory evidence turned over to them under the circumstances presented in this action.

Plaintiff acknowledges that New York law does not provide for such post-conviction disclosure of potentially exculpatory evidence, but he contends that such fact makes New York law constitutionally deficient, because his liberty interest under CPL 440.10(1)(g) should "beget" the additional right to have such post-conviction disclosure.   However, the facts as alleged in the Proposed Amended Complaint do not plausibly establish that New York law is "fundamentally inadequate" within the meaning of *Osborne*.

To begin with, the contention that a state's procedures are fundamentally inadequate because they do not provide for a *Brady*-like right to disclosure of exculpatory evidence post-conviction is contrary to *Osborne*. *See, Osborne*, 557 U.S. at 69, 129 S.Ct. at 2320 ("The Court of Appeals went too far, however, in concluding that the Due Process Clause requires that certain familiar preconviction trial rights be extended to protect Osborne's postconviction liberty interest.   ...   Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.   The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief.") (citations omitted).

Moreover, Plaintiff successfully utilized New York law to overturn his conviction. The fact that the process took longer than it would have in a more-perfect world (in which citizens cooperate with the police rather than allowing innocent neighbors to sit in prison)

does not establish that New York State's procedures are fundamentally inadequate within the meaning of *Osborne*. *See, e.g., McLean v. Brown*, 2010 WL 2609341, at *8 (Finding that despite delays, "McLean was afforded access to state law procedures that cannot be characterized as 'fundamentally unfair,' and the Fourteenth Amendment's Due Process Clause entitles him to nothing more. Accordingly, McLean fails as a matter of law to state a due process claim."); *see also, Gavitt v. Ionia Cty.*, 67 F. Supp. 3d 838, 855–56 (E.D. Mich. 2014) (Where exculpatory information was provided to the plaintiff more than a decade after his conviction: "Gavitt does not and cannot allege that Michigan's post-conviction procedures are inadequate. He successfully used Michigan's post-conviction relief procedures, *i.e.*, filing a motion for relief from judgment under Mich. Ct. Rule 6.502(G)(2), based upon newly-discovered evidence, and obtained his release from prison and the dismissal of the arson and felony-murder charges on which he was previously convicted. Gavitt, therefore, cannot state a § 1983 claim against Prosecutor Gabry based on the failure to disclose exculpatory evidence post-conviction."), *aff'd sub nom. Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016); *Estrada v. Healey*, 647 F. App'x 335, 338–39 (5th Cir. Apr. 27, 2016) ("In noting that '*Brady* is the wrong framework' for analyzing a criminal defendant's liberty interest in obtaining exculpatory evidence in the post-conviction context, the [*Osborne*] Court stated that the pertinent inquiry is whether a State's post-conviction procedures are 'fundamentally inadequate to vindicate the substantive rights provided.' Estrada has not advanced such a claim, *and, indeed, Estrada's rights were vindicated when Texas's post-conviction process resulted in overturning his conviction and his release from prison.*") (emphasis added; citations

omitted), *cert. denied*, 137 S. Ct. 226, 196 L. Ed. 2d 174 (2016).

To the extent that New York's procedures could be expanded to provide more protection to persons such as Plaintiff, who would have no way of knowing that they should seek disclosure of exculpatory information in the possession of the police, that is a matter for the New York legislature.    The Supreme Court, in *Osborne*, and the Second Circuit, in *Newton*, have cautioned that federal courts should not "expand the rights provided by" state law. *See, e.g., Newton v. City of New York*, 779 F.3d at 151 ("[W]e must take care to avoid suddenly constitutionalizing the area of DNA testing and thereby placing the matter outside the arena of public debate and legislative action.   ...   We defer to States in this area because it is normally within the power of the State to regulate procedures under which its laws are carried out, and States have considerable expertise in matters of criminal procedure and the criminal process grounded in centuries of common law tradition.") (citations and internal quotation marks omitted).

Furthermore, even assuming *arguendo* that Plaintiff could establish that Movants violated his procedural due process rights by failing to disclose Mrs. Boyd's statement to him *in a more timely manner*, Movants would be entitled to qualified immunity,[35] since it is not clearly established now, let alone at the time of the alleged violations, that such a right exists. *See, Gavitt v. Born*, 835 F.3d at 648 (6th Cir. 2016) ("In *Osborne*, 557 U.S. at 68, 129 S.Ct. 2308, the Supreme Court noted that "nothing in our precedents" suggests

---

35 "Qualified immunity protects officials from damages liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Antic v. City of New York*, No. 17-2670-CV,   --- F.App'x --- , 2018 WL 3478834, at *1 (2d Cir. July 19, 2018) (citations omitted).

that the prosecutor's obligation to disclose *Brady* material to the defendant before trial

continues after the defendant is convicted and the case is closed. Gavitt has failed to cite

any contrary authority. To the extent due process could be deemed to include such an

obligation, it is not yet a matter of clearly established law and defendants are entitled to

qualified immunity. It follows that the district court did not err by dismissing Count IV.");

*see also, Estrada v. Healey*, 647 F. App'x at 338-339 (5th Cir. 2016) (Criminal defendant

alleged that between 2012-2013, district attorney violated his constitutional rights by

failing to notify him, after district attorney learned post-conviction that crime lab scientist

(Salvador) had been caught falsifying results in cases; the court affirmed that defendants

were entitled to qualified immunity: "Estrada cites no case law establishing a due process

right to the timely disclosure of exculpatory evidence discovered after his conviction, *i.e.,*

Salvador's misconduct. Instead, he relies exclusively on the rule announced in *Brady* that

due process requires a prosecutor to disclose material, exculpatory evidence to a

defendant before trial.   His argument is undercut by the Supreme Court's decision in

[*Osborne,*] which explicitly declined to extend *Brady*'s pre-trial protections to the post-

conviction context.   . . .   Although Estrada takes great pains to distinguish *Osborne* and

press his due process argument under *Brady*, he points to no existing precedent placing

the constitutional question beyond debate.   Appellees are therefore entitled to qualified

immunity.") (citations and internal quotation marks omitted); *Grier v. Klem*, 591 F.3d 672,

678 (3d Cir. 2010) ("[P]rocedural due process does not require that a district attorney

disclose all potentially exculpatory evidence for postconviction relief to a prisoner.").

     For all of the foregoing reasons, Movants' application to dismiss Plaintiff's

Fourteenth Amendment procedural due process claim is granted.

### Sixth Amendment

The Proposed Amended Complaint contends that Bushart, Beradini, Brennan and Galetta violated Plaintiff's Sixth Amendment "right to a speedy trial."36 Movants contend that the Proposed Amended Complaint fails to state a Sixth Amendment speedy trial claim, citing *Betterman v. Montana*, 136 S.Ct. 1609, 1612 (2016), in which the Supreme Court held, *inter alia*, that there is no Sixth Amendment speedy-trial right once a defendant has been found guilty at trial. In a footnote in his response, Plaintiff concedes that Movants are correct.37 Movants are indeed correct, and the Sixth Amendment claim must therefore be dismissed.

### *Monell* Claim

The Proposed Amended Complaint asserts that the City of Rochester is liable for the alleged constitutional violations, due to having "a custom and practice of withholding exculpatory information and/or evidence from convicted persons."38 Movants contend that no constitutional violations occurred, and that in any event the pleading fails to plausibly allege a basis to impose *Monell* liability. Based upon the Court's discussion above, finding that the pleading fails to state a plausible underlying constitutional violation, the Court agrees with Movants that the *Monell* claim against the City must also be dismissed. *See, Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose

---

36 Proposed Amended Complaint at paragraphs 60-61, 67-68.
37 Pl. Response [#37] at unnumbered p. 4, n. 3.
38 Proposed Amended Complaint at paragraph 90.

conduct the municipality can be responsible, there is no basis for holding the municipality liable. *Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy. Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff.").

For all of the foregoing reasons, the Proposed Amended Complaint fails to state a claim under Section 1983 against the Movants, and the First, Second and Fifth Causes of Action are dismissed.

### Section 1985 Conspiracy Claims

As previously mentioned, the Sixth and Seventh Causes of Action in the Amended Complaint purport to state conspiracy claims under § 1985. The Sixth Cause of action, against Brennan and Galetta, alleges that they conspired to "impede, hinder, obstruct, and defeat the due course of justice by directing Kathleen Boyd not to tell the Plaintiff or anyone else for that matter, that her estranged husband (Darrell Boyd) had confessed to the murders of Clara Sconiers and Thomas Reed."   Plaintiff's theory is that Brennan and Galetta conspired with Mrs. Boyd after they interviewed her in May 2012.   The Seventh Cause of Action, against Brennan, Galetta, Doorley, Green and Wolford, alleges that they conspired with each other, on May 29, 2012, to deny Plaintiff unspecified "rights and privileges" and to "impede, hinder, obstruct, and defeat the due course of justice by failing to disclose to the Plaintiff, a judge, or other competent authority (for eighteen months) the exculpatory information [obtained from Mrs. Boyd.]"

Neither the Sixth nor the Seventh Causes of Action reference a particular constitutional provision.   Consequently, the causes of action do not specify which of Plaintiff's constitutional rights the Defendants allegedly conspired to violate.   The only constitutional provisions expressly referenced in the Proposed Amended Complaint are the Fourth, Fifth, Sixth and Fourteenth Amendments.   In arguing that the proposed amendment is futile, Movants reasonably interpreted the Sixth and Seventh Causes of Action to allege that Defendants conspired to violate Plaintiff's purported Fourteenth Amendment *Brady-like* right to post-conviction disclosure of exculpatory evidence. Movants argued that such claims fail to state an actionable claim, since no such *Brady-like* post-conviction right exists. For the reasons already discussed, the Court agrees, and therefore finds that the Sixth and Seventh Causes of Action fail to state actionable claims against Brennan or Galetta.   In sum, Brennan and Galetta could not have conspired to violate Plaintiff's right to post-conviction disclosure of exculpatory evidence, because New York law provides him no such right, and there is no such freestanding constitutional right. Alternatively, Brennan and Galetta would clearly be entitled to qualified immunity.

In his Reply [#37] in support of the Motion to Amend, Plaintiff belatedly refers to a "First Amendment access to the courts claim," even though his pleadings do not reference the First Amendment or an "access to the courts claim."   To the extent that Plaintiff is attempting to re-cast the Sixth and Seventh Causes of Action in the Proposed Amended Complaint as asserting conspiracies to violate Plaintiff's right of access to the courts, the

attempt fails.39   First, as already noted the pleading does not actually assert such a claim. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint give "fair notice" of the claims being asserted, *see, e.g., Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), and Plaintiff's pleadings do not give fair notice that he is attempting to assert a "First Amendment access to the courts claim."

Further, even if the Proposed Amended Complaint could be construed as asserting such a claim, the claim is not plausible since it does not allege an actual injury that is traceable to the alleged conspiracy involving Brennan and Galetta. *See, Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. Nov. 17, 2015) ("To succeed on an access to courts claim, a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim.").   Here, there is no contention that Plaintiff was actually attempting to litigate a particular collateral attack or other claim during the relevant time, and no contention that Brennan or Galetta prevented him from doing so.   To the extent that Plaintiff maintains that Brennan and Galetta denied him access to the Courts by failing to inform him of Mrs. Boyd's statement, the Court has already found that they had no obligation to do so.   To the extent that Plaintiff maintains that Brennan and Galetta denied him access to the Courts by telling Mrs. Boyd not to talk with anyone else about the matter while they investigated it, any injury therefrom is far

---

39 The discussion of a "First Amendment access to the courts claim" in Plaintiff's Reply [#37] does not reference any specific cause of action in the Proposed Amended Complaint, however, it seems most likely to be related to the Sixth and Seventh Causes of Action, since it refers to Galetta and Brennan telling Mrs. Boyd not to talk with anyone about the exculpatory evidence, which is the same basis for the Sixth and Seventh Causes of Action.

too remote and speculative to provide standing, since there is no indication that Mrs. Boyd would have talked with Plaintiff about the matter in the absence of the direction from Brennan and Galetta. To the contrary, there is every indication that she would have continued not to do so, since she never attempted to contact Plaintiff during the preceding decade, and refused to provide further details to Officer Bushart in 2005. It must be remembered that Mrs. Boyd never voluntarily came forward with the exculpatory information. Rather, in 2005, in Bushart's presence, she disclosed only enough information to force her husband to leave the marital residence, and then refused to speak further with Bushart. Then, in 2012, she spoke with Brennan only after he tracked her down using Bushart's report. Accordingly, Plaintiff's attempt to paint Mrs. Boyd as a good Samaritan who was thwarted by Brennan and Galetta from doing the right thing is entirely implausible.40  For all of the foregoing reasons, the Sixth and Seventh Causes of Action are dismissed as against Brennan and Galetta, for failure to state a claim.

Movants have demonstrated that all of the claims against them in the Proposed Amended Complaint are futile. Accordingly, Movants' motion to dismiss will be granted, and Plaintiffs motion to amend will be denied as to the Movants.

## CONCLUSION

Movants' motion to dismiss [#3] is granted, and the claims (and proposed claims) against the City of Rochester, RPD, Bushart, Beradini, Brennan and Galetta are

---

40 See, e.g., Aff. Of Pl. Counsel [#30-1] at parargraph 19E ("[T]hey instructed a witness (who cried as she told them that 'an innocent man was in jail') not to tell the Plaintiff."); see also, Proposed Amended Complaint [#30-1] at paragraph 41 ("She [Mrs. Boyd] was adamant, in her description of the events, that an innocent man (the Plaintiff) was sitting in jails for crimes that he did not commit.").

dismissed with prejudice.   The Clerk is directed to terminate those parties, along with Michael Green, as defendants in this action.[41]   The state-law claims for negligent training, supervision and retention, malicious prosecution, IIED and NIED (the dismissal of which Plaintiff did not oppose and which have not been included in the proposed amended complaint) are dismissed with prejudice as to all Defendants.   Plaintiff's motion to amend [#30] is denied as to the City of Rochester, RPD, Bushart, Beradini, Brennan and Galetta, but is granted as to the County Defendants, who did not oppose the application.

SO ORDERED.

Dated:    Rochester, New York
          September  5     , 2018

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge

---

[41] *See*, Docket No. [#30-1] at ¶ 24 (discontinuing action as against Michael Green).