UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES PIERRE,

                              Plaintiff,        DECISION and ORDER

-vs-
                                              16-CV-6428 CJS

CITY OF ROCHESTER, ROCHESTER POLICE
DEPARTMENT, MICHAEL GREEN, SANDRA
DOORLEY, MONROE COUNTY DISTRICT
ATTORNEY, MONROE COUNTY DISTRICT
ATTORNEY'S OFFICE and MONROE COUNTY,

                              Defendants.
_____

INTRODUCTION

Now before the Court is Plaintiff's "Motion to Reargue" (Docket No. [#54]), directed at a Decision and Order [#50] that the Court issued on September 7, 2018. The application is denied.

BACKGROUND

The reader is presumed to be familiar with the Court's previous Decision and Order [#50], which went through the facts of this action in great detail.

Briefly, Charles Pierre ("Plaintiff") filed this action under 42 U.S.C. § 1983 and New York State Law, alleging that he was improperly convicted of murder and arson, and that defendants subsequently delayed informing him --for more than eight years-- of evidence obtained post-conviction that eventually contributed to his convictions being vacated.

The evidence which Defendants allegedly delayed providing to Plaintiff was the assertion by Kathleen Boyd ("Mrs. Boyd") that her husband, Darrell Boyd ("Mr. Boyd"), was actually responsible for the murders and arson for which Plaintiff had been convicted.

1

The Boyds had lived in the same apartment house as the murder victims, who were killed on August 2, 2002. According to Mrs. Boyd, within a day after the murders her husband told her that he had robbed and murdered the victims, and that he had set the victims' apartment on fire to cover up his crimes. However, Mrs. Boyd did not tell anyone about her husband's involvement, because she feared him and because she feared that she might be prosecuted along with him.

However, on September 18, 2005, Mrs. Boyd told a police officer, RPD Officer Bushart ("Bushart"), who was responding to her 911 domestic violence call, that her husband was guilty of the murders. In particular, in the presence of both Mr. Boyd and Bushart, Mrs. Boyd stated that Mr. Boyd was responsible for the murders, and that she would disclose more details unless he agreed to leave the marital residence immediately. After Mr. Boyd left the residence, Bushart attempted to question Mrs. Boyd further about her statement, but she refused to provide any additional information. Bushart wrote a report concerning the event, stating:

> Police responded to 835-7 Merchants Rd. for a family trouble. In anger, S- Kathleen Boyd stated that S- Darrell Boyd had committed arson & murder. S- Kathleen Body threatened to divulge the details unless he left. S- Darrell Boyd appeared to become upset by this. S- Kathleen Boyd stated that S- Darrell Boyd was responsible for the arson/homicide at 262 First St. and that an innocent person was in prison for the incident. After S- Darrell Boyd left, S- Kathleen Boyd would not discuss the matter further.

(Docket No. [#32], Exhibit B). Bushart's supervisor reviewed the report and placed it in the RPD's files.

Subsequently, for approximately seven more years, Mrs. Boyd continued to remain

silent about her husband's involvement in the murders. Then, on May 2, 2012, RPD Investigator Robert Brennan ("Brennan") was investigating Mr. Boyd's involvement in another crime, when he discovered Bushart's 2005 report in the RPD's files. Brennan, along with his partner, Investigator Galetta ("Galetta") interviewed Mrs. Boyd, who admitted that her husband had confessed to her that he had committed the murders and arson. At the close of the interview, Brennan and Galetta told Mrs. Boyd not to discuss the matter with anyone else.

The interview by Brennan and Galetta led to an investigation by the RPD and Monroe County District Attorney's Office, which eventually found that Mr. Boyd had also discussed the murders with other persons while he was in jail.

On November 25, 2013, the District Attorney's Office informed Plaintiff that it had evidence that Mr. Boyd had confessed to his wife and others that he had committed the murders. Plaintiff used this information to file a successful collateral attack pursuant to New York Criminal Procedure Law ("CPL) § 440.10(1)(g). The District Attorney elected to re-try Plaintiff, but he was acquitted at the second trial.

Plaintiff eventually commenced this action. On September 7, 2018, the Court issued a Decision and Order (Docket No. [#50]) granting the City Defendants' motion to dismiss and denying Plaintiff's cross-motion to amend as to the City Defendants. The action remains pending as to the County Defendants.

On October 9, 2018, Plaintiff filed the subject Motion to Reargue [#54], purportedly pursuant to Rules 59(e) and 60(b)(1) of the Federal Rules of Civil Procedure. The application claims that the aforementioned Decision and Order [#50] contains "several

factual and legal errors," involving the Court's failure "to look at the facts in the light most favorable to Plaintiff."[1] That is, Plaintiff believes the Court failed to accept the material facts alleged in his Amended Complaint as true and to draw all reasonable inferences in his favor. Plaintiff contends that the Court erred in this regard when it inferred that Mrs. Boyd had apparently not told Bushart *how* she knew that her husband had committed the murders. Specifically, in a footnote, the Court stated:

> At the time of the murders and arson in 2002, Mr. & Mrs. Boyd resided in the same apartment building at 262 First Street as the victims, and Mr. Boyd confessed to Mrs. Boyd that he was guilty of the crimes. However, there is no indication that Mrs. Boyd provided either of those bits of highly-relevant information to Bushart. See, Docket No. [#32], Exhibit B. Consequently, it appears that Mrs. Boyd merely made the bald assertion that her husband was responsible for the murders, without indicating the basis for her statement. Moreover, when Bushart asked her to explain the statement, she refused. Therefore, the statement in ¶ 31 of the Proposed Amended Complaint that Mrs. Boyd told Bushart that "her husband (Darrell Boyd) had *confessed* to a homicide on First Street" is actually incorrect, and is further refuted by the next paragraph of the pleading, ¶ 32, which admits that Bushart recorded what Mrs. Boyd had said in his report. Therefore, the assertion in ¶ 31 of the pleading that Bushart knew Mr. Boyd had confessed to the crimes is a logical leap that is unsupported by, and indeed, is refuted by, Bushart's report.

Decision and Order [#50] at p. 4, n. 5. Plaintiff contends that the Court should have instead drawn the inference that Mrs. Boyd told Bushart that her husband had confessed to her that he committed the crimes.

Further, Plaintiff contends that the Court failed to draw all reasonable inferences in his favor when it described how the RPD Defendants conducted their investigation after

---

[1] Docket No. [#54-2] at un-numbered pp. 2, 5.

Investigator Brennan learned, in 2012, of Mrs. Boyd's statement implicating her husband in the murders. In that regard, the Court accurately pointed out that such investigation discovered additional information that corroborated Mrs. Boyd's statement, and which eventually helped Plaintiff to have his convictions set aside. Plaintiff, though, believes that such observation was unfair to him, insofar as it assumed that "the Defendants' 'investigative efforts' were beneficial to the Plaintiff's interest."[2]

Additionally, Plaintiff maintains that the Court erred by indicating that Investigators Brennan and Galetta seemingly had a legitimate reason for telling Mrs. Boyd not to discuss the matter with anyone else while they investigated her claim, and that, in any event, it did not seem likely that Mrs. Boyd would have talked to anyone, since she had not done so during the preceding decade. Specifically, as part of its analysis of Plaintiff's *Russo* Fourth Amendment claim, the Court stated:

> Although Brennan and Galetta may have told Mrs. Boyd not to talk to anyone about the matter while they investigated it, such fact does not amount to suppression of evidence, particularly since there is no indication that Mrs. Boyd had any intention to talk to Plaintiff, or anyone else, about the matter. In any event, the pleading does not suggest that the investigators' intent in that regard was malicious or wrongful. Rather, it seems obvious that Brennan wanted to interview Plaintiff without him knowing the true reason therefor, which is a legitimate investigative tactic.[3]

Plaintiff maintains that the Court should have instead drawn the inference that Brennan and Galetta told Mrs. Boyd not to discuss the matter with anyone because they wanted

---

[2] Docket No. [#54-2] at p. 4.
[3] Docket No. [#50] at p. 33.

to "intentionally and maliciously suppress[ ] this exculpatory evidence."[4] Further, Plaintiff argues that the Court should have drawn the inference that Mrs. Boyd would have told him about her husband's confession *but for* Brennan and Galetta telling her not to discuss the matter with anyone. Plaintiff's theory on this point is that if Brennan and Galetta had not told Mrs. Boyd to keep the matter to herself while they investigated it, she would have contacted him in prison and told him about Mr. Boyd's involvement, which would have enabled him to bring his CPL § 440.10 motion sooner.

On October 19, 2018, City Defendants filed a response [#58, 59] to Plaintiff's motion. City Defendants essentially argue that Plaintiff's motion should be denied, since the Court drew all reasonable inferences in Plaintiff's favor, and since the points about which Plaintiff complains would not have changed the outcome of the Court's ruling.

DISCUSSION

Although Plaintiff purports to bring this motion pursuant to Rules 59(e) and 60(b)(1), the latter rule is not generally used to seek reconsideration of an alleged error by the Court. *See, Turner v. Vill. of Lakewood, N.Y.*, 594 F. App'x 25, 25–26 (2d Cir. 2015) ("Rule 60(b)(1) "provides for relief from mistake, inadvertence, surprise, or excusable neglect. Generally this provision has been invoked to remedy the mistake *of a party or his representatives.*" *In re Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir.1981) (emphasis added). If a party seeks to challenge a decision of the district court, as the plaintiffs do here, on the grounds that it is mistaken or erroneous, there are other rules

---

[4] Docket No. [#54-2] at p. 5.

under which he or she may proceed, most obviously a direct appeal in the Court of Appeals under Federal Rule of Appellate Procedure 4, or a motion in the district court under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment in question.").

Rule 59(e), on the other hand, pertains to motions "to alter or amend a Judgment." A "judgment" "includes a decree and any order from which an appeal lies." Fed.R.Civ.P. 54(a). Here, the Court has dismissed Plaintiff's claims against City Defendants, but not County Defendants, and has not yet entered judgment.

Accordingly, the case and Plaintiff's motion are covered by Rule 54(b), "Judgment on Multiple Claims or Involving Multiple Parties," which states:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (Westlaw 2018); *see also, Warr v. Liberatore*, No. 13-CV-6508P, 2018 WL 3237733, at *1 (W.D.N.Y. July 3, 2018) ("While the Federal Rules of Civil Procedure do not expressly provide for a motion to 'reconsider' a prior order, motions for reconsideration may be filed under Federal Rules of Civil Procedure 59(e), 54(b), or 60(b). In this case, because the Decision did not result in an appealable final judgment, Rule 54(b) governs this motion for reconsideration.") (citations and internal quotation marks omitted).

"In other words, under Rule 54(b), the Court has inherent power to reconsider any of its own entries prior to the entry of a judgment adjudicating all the claims." *Warr v. Liberatore*, 2018 WL 3237733, at *1 (citation and internal quotation marks omitted). However,

> [t]he Second Circuit has limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again. *Motions for reconsideration will generally be denied unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.* These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court. Importantly, a party may not use a motion for reconsideration to advance theories of relief or facts that were not previously presented to the court.

*Warr v. Liberatore*, 2018 WL 3237733, at *2 (emphasis added; citations and internal quotation marks omitted).

Here, at the outset the Court notes that Plaintiff's motion is supported in part with evidence outside of the pleadings, including an affidavit from Mrs. Boyd[5] and testimony by Officer Bushart at Plaintiff's 2015 re-trial. However, the Court will not consider those materials, since they were not part of the Amended Complaint which the Court was evaluating in the underlying Decision and Order [#50].

---

[5] According to Black's Law Dictionary, 10th Ed., a notary's jurat typically "certifies three things: (1) that the person signing the document did so in the officer's presence, (2) that the signer appeared before the officer on the date indicated, and (3) that the officer administered an oath or affirmation to the signer, who swore to or affirmed the contents of the document." Strangely, Mrs. Boyd's affidavit, which purports to be notarized by Plaintiff's attorney, is not dated, either as part of the affidavit or as part of the jurat.

Regarding the grounds for Plaintiff's motion, he has not identified any change in controlling law or submitted any newly-discovered evidence that may properly be considered. Rather, Plaintiff apparently maintains that the Court committed a "clear error" by failing to properly apply the Rule 12(b)(6) standard, which requires courts to "accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000). However, Plaintiff's arguments lack merit.

To begin with, the Court does not agree that it was required to accept as true the Amended Complaint's assertion that ""[d]uring the course of Defendant Bushart's conversation with Kathleen Boyd, she indicated that he husband (Darrell Boyd) had confessed to a homicide on First Street."[6] This statement, in addition to being hearsay, is a mere bare assertion, unsupported by any explanation as to how Plaintiff would know what Mrs. Boyd told Bushart twelve years earlier. *See, Miller v. Mchugh*, No. 14-CV-5026 (CS), 2016 WL 698147, at *5 (S.D.N.Y. Feb. 19, 2016) (citing *Iqbal* for the proposition that "bare assertions cannot constitute a plausible claim for relief."), *appeal dismissed* (May 5, 2016). Meanwhile, the Amended Complaint's very next paragraph indicates that what Mrs. Boyd actually said to Bushart was "recorded" in Bushart's report, which does *not* indicate that Mrs. Boyd told Bushart that her husband had *confessed* to murder.[7] Rather, as set forth earlier, Bushart's report states:

---

[6] Amended Complaint at ¶ 31.
[7] Amended Complaint at ¶ 32.

> Police responded to 835-7 Merchants Rd. for a family trouble. In anger, S-
> Kathleen Boyd stated that S- Darrell Boyd had committed arson & murder.
> S- Kathleen Body threatened to divulge the details unless he left. S-
> Darrell Boyd appeared to become upset by this. S- Kathleen Boyd stated
> that S- Darrell Boyd was responsible for the arson/homicide at 262 First St.
> and that an innocent person was in prison for the incident. After S- Darrell
> Boyd left, S- Kathleen Boyd would not discuss the matter further.

(Docket No. [#32], Exhibit B). Notably absent from the report is any reference to an admission or confession of guilt by Mr. Boyd. Consequently, and as the Court explained in its prior Decision and Order, it is not clear from Bushart's report how Mrs. Boyd claimed to know that her husband was guilty of murder. Accordingly, the inference which the Court drew was reasonable.[8]

This issue is irrelevant, however, because even if the Court had accepted the assertion that Mrs. Boyd told Bushart that her husband had confessed to the First Street murders,[9] the Court would still have granted City Defendants' motion to dismiss and denied Plaintiff's cross-motion to amend, for the reasons discussed in the prior Decision and Order [#50].

Nor does the Court agree with Plaintiff that it erred insofar as it suggested that "the

---

[8] All of this discussion would be unnecessary if Plaintiff had drafted his pleading more clearly. As it was, the Court was faced with an apparent contradiction in the Amended Complaint, which it resolved by drawing a reasonable inference from the best indicator of what Mrs. Boyd actually said, i.e., Bushart's contemporaneous report.

[8] Docket No. [#54-2] at p. 4.

[9] Either way, Bushart was faced with a bare, unsubstantiated allegation from Mrs. Boyd, that her husband was a murderer. Whether or not Mrs. Boyd told Bushart that Mr. Boyd had confessed is really beside the point, since Bushart would still have had no way of knowing whether she was telling the truth. However, for purposes of this lawsuit, what Mrs. Boyd actually said is less important than what Bushart did in response to the statement. As to that, Bushart took the statement seriously and attempted to question Mrs. Boyd further, but she refused to cooperate with him.

Defendants' 'investigative efforts' were beneficial to the Plaintiff's interest."[10] As was evident from the record before the Court on the 12(b)(6) motion, those investigative efforts were clearly beneficial to Plaintiff, as explained in the underlying Decision and Order [#50]. For example, such investigative efforts uncovered evidence corroborating Mrs. Boyd's claim, which Plaintiff used to successfully collaterally attack his conviction. Moreover, the Court's observation that the investigation was ultimately helpful to Plaintiff (even though it took longer than Plaintiff would have wanted) was relevant to the Court's analysis of whether Plaintiff had stated a plausible constitutional claim, such as under *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007). In that regard, the Court was pointing out that although Plaintiff wishes that he had been told about Mrs. Boyd's statement immediately, rather than after the investigation was completed, this is not a situation, such as existed in *Russo*, where the defendants attempted to prevent the Plaintiff from ever learning about clearly-exonerating evidence by hiding it in a drawer.

Finally, the Court does not agree that it erred when it drew the inferences that Brennan and Galetta seemingly had a legitimate reason for telling Mrs. Boyd not to discuss the case with anyone while they investigated, and that it was unlikely in any event that Mrs. Boyd would have discussed the matter with others. Such inferences are reasonable, based on the facts alleged in the Amended Complaint. Namely, the pleading indicates that Brennan wanted to interview Plaintiff without him knowing the true reason for the interview, as an investigative technique, and the pleading also points out that Mrs.

---

[10] Docket No. [#54-2] at p. 4.

Boyd had not shown any inclination to talk to anyone about the matter during the preceding ten years. In the absence of contrary factual allegations, it would have been unreasonable to draw the inferences suggested by Plaintiff, namely, that Brennan and Galetta had a malicious purpose for telling Mrs. Boyd not to discuss the case, and that but for their instructions Mrs. Boyd would have immediately contacted Plaintiff in prison and told him about her husband's guilt. Plaintiff's argument on these points rests only on "bare allegations" and "formulaic recitations of the elements of a constitutional violation," which the Court was not required to credit.[11]

In sum, Plaintiff has not shown that the Court should reconsider its prior Decision and Order [#50].

## CONCLUSION

Plaintiff's Motion to Reargue/Motion for Reconsideration [#54] is denied.

SO ORDERED.

Dated:     Rochester, New York
          November 2, 2018

                        ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge

---

[11] *See, D'Alessandro v. City of New York*, 713 F. App'x 1, 3 (2d Cir. Octo. 17, 2017) ("[P]leadings that are no more than conclusions are not entitled to the assumption of truth. Bare assertions that amount to nothing more than a formulaic recitation of the elements of a constitutional violation are conclusory and not entitled to be assumed true.") (citations and internal quotation marks omitted).